OPINION OF THE COURT
Jack Turret, J.
This proceeding was initiated under the Uniform Support of Dependents Law (USDL) (Domestic Relations Law, art 3-A). The petitioner, ex-wife, seeks enforcement of an alimony provision of $640 per month set forth in the judgment of divorce entered in the Superior Court, County of Fairfield, State of Connecticut, dated July 2, 1970 (Domestic Relations Law, § 32, subd 1). The Superior Court of Washington County, Maine (where petitioner now lives) is the initiating court.
*428 Respondent ex-husband asserts as a defense that petitioner has habitually lived with another man for various and extended periods of time over the past 14 years. It is further argued that her conduct goes beyond merely living with this man and constitutes, also, a holding out of herself as his wife. Respondent urges that this conduct should result in a denial of this petition.
What law governs? This would be a valid defense were this a plenary action to enforce the alimony provision of a foreign decree (Domestic Relations Law, § 248).* Though a USDL proceeding is an “additional or alternative” remedy (Domestic Relations Law, § 41) to a plenary action, the court is of the opinion that this defense may be pleaded here. In a USDL proceeding, the responding State determines whether the respondent owes a duty to the petitioner according to its own laws (see Matter of Lalli v Lalli, 80 AD2d 897; Lee v Lee, 110 Misc 2d 623; Matter of Post v Moore, 99 Misc 2d 812; Matter of Gemmiti v Beagle, 94 Misc 2d 588). It is this court’s opinion that New York law governs.
In ruling on the defense pleaded, this court is bound by the Court of Appeals interpretation of section 248 of the Domestic Relations Law. Both “habitually living with another man” and “holding herself out as his wife” must be proved (Northrup v Northrup, 43 NY2d 566). Recent applications of this rule can be found in Smith v Smith (88 AD2d 658); Miklowitz v Miklowitz (79 AD2d 795, app den 53 NY2d 604); and Spillman v Spillman (67 AD2d 942). In establishing this dual burden in Northrup (supra, p 571), the Court of Appeals commented that, “[t]he fact that a *429 woman may avoid the loss of alimony by tailoring her conduct should not be surprising.”
At the hearing before me on April 5, 1984, respondent testified. A transcript of a deposition of the petitioner and her alleged paramour taken in Maine by respondent’s attorney was entered into evidence upon stipulation of both sides. Certain portions of the transcript were also read into the record.
It was brought out that petitioner habitually lived with her alleged paramour over the past 14 years; she jointly purchased land with him and jointly pays taxes on it; he attended her children’s graduations; she used his car; they at times shared living expenses; and petitioner’s children lived with them at times. As to each of these instances, the record is completely devoid of any proof adduced that indicates petitioner, through her direct action or by implication, held herself out as her paramour’s wife (e.g., used paramour’s name, introduced herself as his wife, acted in a manner that would lead others to believe she was married).
On the proof adduced, this court finds that respondent has failed to meet his burden of establishing petitioner through her conduct has held herself out as another man’s wife. This court finds as a fact that there was no “holding out” as husband and wife as required by the Court of Appeals in Northrup v Northrup (supra). However- notorious petitioner’s actions in “habitually living with another man”, over such an extended period of time, these actions do not in and of themselves constitute the necessary showing that she also held herself out as his wife. Though, “[t]he statute [Domestic Relations Law, § 248] may indeed be circumvented where the woman negates any inference that she is holding herself out as married (see Stern v Stern, 88 Misc 2d 860, 864). To be disapproved, however, are holdings that, in the absence of efforts to show that the parties are not man and wife, the ‘life style’ of the parties constitutes a ‘holding out’ (see Matter of Anonymous, 90 Misc 2d 801, 804).” (Northrup v Northrup, supra, p 571.)
It is significant that despite his apparent knowledge of this relationship between petitioner and her alleged paramour, respondent continued to pay petitioner alimony from *430 1972-1982, after a mutual agreement not to furnish alimony for a period in 1971-1972.
A final order of support in the amount of $640 per month is directed to be paid the first day of each month through the Support Collection Unit. The order shall be retroactive to the date of filing of the petition, and the retroactive amount due shall be paid in equal quarterly payments beginning July 2, 1984 (Family Ct Act, § 449; Lee v De Haven, 87 AD2d 576).

 Domestic Relations Law, § 248.
“Modification of judgment or order in action for divorce or annulment.
“Where an action for divorce or for annulment or for a declaration of the nullity of a void marriage is brought by a husband or wife, and a final judgment of divorce or a final judgment annulling the marriage or declaring its nullity has been rendered, the court, by order upon the application of the husband on notice, and on proof of the marriage of the wife after such final judgment, must modify such final judgment and any orders made with respect thereto by annulling the provisions of such final judgment or orders, or of both, directing payments of money for the support of the wife. The court in its discretion upon application of the husband on notice, upon proof that the wife is habitually living with another man and holding herself out as his wife, although not married to such man, may modify such final judgment and any orders made with respect thereto by annulling the provisions of such final judgment or orders or of both, directing payment of money for the support of such wife.”